UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| *ex rel.* THOMAS REED SIMMONS, ) | |
| ) | Civil Case No. 3:11-0439 |
| **Plaintiff-Relator,** ) | |
| ) | Judge Campbell |
| v. ) | |
| ) | Magistrate Judge Knowles |
| MERIDIAN SURGICAL PARTNERS, LLC, ) | |
| et al., ) | |
| ) | |
| **Defendants.** ) | |

## INITIAL CASE MANAGEMENT ORDER

Pursuant to Local Rule 16.01(d)(2), the following Initial Case Management Plan is adopted.

**I.     Jurisdiction and Venue**

This civil action arises under the Federal False Claims Act, 31 U.S.C. § 3729 *et seq*. ("FCA"). Jurisdiction over this action is vested in this Court by 31 U.S.C. § 3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3729 and § 3730, and by 28 U.S.C. § 1331, which confers federal-question subject matter jurisdiction. This Court has personal jurisdiction over Defendants under 31 U.S.C. § 3732(a) because one or more Defendants can be found, resides, or transacts business in this District. The Defendants named in the Amended Complaint have accepted service of the Amended Complaint and have waived service of process.[1]

---

[1] In addition to the twenty named Defendants, the Amended Complaint asserts claims against unidentified "John Doe Corporations A Through P." (Am. Compl. ¶ 31.)

Venue is proper in this district under 31 U.S.C. § 3732(a) because one or more Defendants can be found, resides, or transacts business within the District and because many of the acts forming the basis of this action are alleged to have occurred within the District.

## II. Plaintiff-Relator's Theory of the Case

Defendant Meridian Surgical Partners, LLC (Meridian) is the majority owner and operator of 17 ambulatory surgical centers (ASCs, also called outpatient surgical centers) nationwide. Relator Thomas Reed Simmons was the business-office manager of one of those ASCs, Defendant Treasure Coast Surgery Center, LLC, in Stuart, Florida, from May 2008 to September 2011. He alleges that the Meridian ASCs defrauded the Federal Medicare program by (1) paying physician shareholders kickbacks for referring patients to the ASCs and then (2) charging Medicare for the procedures performed on the referred patients, in violation of the False Claims Act and the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b(g).

The kickbacks take the form of lucrative cash distributions from ASC assets. These purported returns on the physicians' "investments" in the ASCs far exceed bona fide investment returns and are, in fact, unlawful rewards for referrals. Moreover, Defendants offer ASC shareholders with especially high referrals the opportunity to purchase additional shares at low cost, entitling them to even greater distributions. Defendants' kickback-based business model is not immunized from liability by the AKS safe harbor regulations. Among other things, the regulations do not shield purported investment returns that are "related to the previous or expected volume of referrals . . . from th[e] investor to the ASC." 42 C.F.R. § 1001.952(r)(3)(i).

Had Federal health-care officials known of the Meridian Defendants' kickbacks, the Government would not have paid the kickback-tainted Medicare claims. Relator Simmons seeks, on behalf of the United States and himself, the full value of Defendants' fraudulent

Medicare charges from December 2006 through the present, which Mr. Simmons estimates at more than $100 million, plus the maximum civil penalty of $11,000 for each false claim. *See* 31 U.S.C. § 3729(a). He also seeks the maximum 30% share of the recovered proceeds, under 31 U.S.C. § 3730(d)(2), as the United States has opted not to intervene. He has demanded a jury trial.

### III. Defendants' Theory of the Case

Relator is a former employee of Treasure Coast Surgery Center, LLC ("TCSC"), who was terminated for misappropriation of TCSC's funds. Relator filed this *qui tam* action under the False Claims Act ("FCA"), alleging that Defendants paid kickbacks to physicians in violation of the Anti-Kickback Statute, so as to induce them to refer patients to TCSC. Those allegations are false and Relator will be unable to assert facts supporting his claims under the FCA.

Meridian's purchase of a 60% interest in TCSC from TCSC's physician owners was negotiated at fair market value and at arm's length. Meridian and the physician owners valued the interest purchased by Meridian according to a multiple of past earnings, which is the industry-standard method of business valuation. And, the multiple of earnings paid by Meridian as the purchase price was within the range paid in similar deals nationally during this time period involving the acquisition of a majority interest in a multi-specialty surgery center. The same is true for the other surgery centers in which Meridian invested, which Relator added to the Amended Complaint in hopes of pleading a company-wide scheme against his former employer.

Meridian sold minority interests in TCSC to physicians who performed procedures at the ASC and valued those minority interests according to a discounted cash flow model. Again, that method of valuation is standard within the industry for valuing minority interests in ASCs.

TCSC also distributed profits to members according to the member's percentage ownership. All of the distributions made to physician-owners were directly commensurate with the physician-owners' respective ownership interests in TCSC. Relator does not allege, nor will be able to prove, otherwise.

Relator will be unable to prove that Defendants provided improper remuneration to TCSC's physician-owners or that Defendants provided such remuneration for the purpose of inducing patient referrals. As such, Relator cannot state an actionable claim under the Anti-Kickback Statute. Because Relator fails to plead the underlying Anti-Kickback Statute violation, his FCA necessarily will fail.

### IV. Initial Disclosures and Staging of Discovery

This Court issued an Order setting a briefing schedule on February 8, 2013 (Dkt. 46). On February 13, 2013, Defendants filed a Motion to Dismiss the Amended Complaint seeking to dismiss the Amended Complaint under Rule 12(b)(6) and 9(b). Because Defendants have challenged the sufficiency of the pleadings in this matter and because the Court's ruling on such motion will greatly affect the scope of any discovery undertaken in this matter, the parties believe that the most efficient use of resources is to commence the exchange of initial disclosures and discovery after Defendants' Motions to Dismiss has been fully briefed and decided. If a party believes some limited discovery will be needed in connection with the Motion to Dismiss, then the parties shall confer regarding such discovery, and if they are unable to reach agreement, then the parties shall schedule a telephone conference with the Magistrate Judge.

### V. Subsequent Case Management Conferences

After the Court rules on Defendants' Motion to Dismiss, another Case Management Conference may be scheduled to establish a target trial date, as well as deadlines for motions to

amend the pleadings, discovery cut-off, expert disclosures and depositions, and filing of discovery-related motions and dispositive motions.

## VI. Consent to Trial before the Magistrate Judge

The Parties do not consent to trial before the Magistrate Judge.

It is so ORDERED:

_____
HON. E. CLIFTON KNOWLES
UNITED STATES MAGISTRATE JUDGE


APPROVED FOR ENTRY:

/s/ Michael Hamilton
  Michael Hamilton
  PROVOST, UMPHREY LAW FIRM, LLP
  2021 Richard Jones Road, Suite 300
  Nashville, TN 37215

  Jonathan Kroner
  JONATHAN KRONER LAW OFFICE
  420 Lincoln Road, Suite 248
  Miami Beach, FL 33139

  Ross B. Brooks
  SANFORD HEISLER LLP
  1350 Avenue of the Americas, 31st Floor
  New York, NY 10019

  Kyle Chadwick
  SANFORD HEISLER LLP
  1666 Connecticut Ave. NW, Suite 300
  Washington, DC 20009

*Attorneys for Plaintiff-Relator*