IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. THOMAS REED SIMMONS | ) ) ) NO. 3-11-0439 |
| v. | ) JUDGE CAMPBELL ) |
| MERIDIAN SURGICAL PARTNERS, LLC, et al. | ) ) ) |

MEMORANDUM

Pending before the Court is Defendants' Motion to Dismiss Amended Complaint (Docket No. 50). For the reasons stated herein, Defendants' Motion is GRANTED in part and DENIED in part as follows.

FACTS

This action arises from alleged false and fraudulent claims submitted to the U.S. Government by Defendants in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS"). Thomas Reed Simmons ("Relator") brings this action pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA").[1]

Defendant Meridian Surgical Partners, LLC asserts that it specializes in the acquisition, development, management and turnaround of multi-specialty and spine-driven ambulatory surgical centers. Relator alleges that the Meridian Defendants[2] create, offer and manage "investment"

---

[1] After review and investigation, the United States Government declined to intervene in this action. Docket No. 29.

[2] Defined in the Amended Complaint as Meridian Surgical Partners, LLC, Meridian Surgical Partners - Florida II, LLC and MS Holding Co., Inc.

opportunities for physicians in ambulatory surgical centers, also known as outpatient surgical centers. Relator claims that Defendants pay the physicians for referring patients to the centers, in violation of the AKS. Relator contends that, as a result of these kickbacks and tainted referrals, Defendants submit or cause to be submitted false or fraudulent claims for payment by federal healthcare programs, primarily Medicare, in violation of the FCA.

Relator's Amended Complaint (Docket No. 33) alleges that, in June of 2007, the Meridian Defendants paid the physician owners of Treasury Coast Surgery, Inc. (a non-defendant) more than $5.7 million for an undivided 60% interest in its assets, thus valuing the total assets of Treasury Coast Surgery, Inc. at about $9.6 million, with a 1% share thus valued at about $96,000. Relator contends that, in fact, the total net assets of Treasury Coast Surgery were worth less than $550,000. Thus, Relator alleges, the physician owners received far in excess of the true value of these assets.

Relator also alleges that a few months later, Defendants sold shares of Treasure Coast Surgery Center, LLC ("TCSC")[3] to various physicians using figures which implied a total value of $2.3 million, thus artificially inflating the value when buying shares from physicians, deflating the value when selling shares to physicians or both.[4] Relator contends that he has adequately relied upon the Defendants' own evaluations of these values and the inconsistencies thereof to plead his claims. Relator claims he has pleaded with specificity that Meridian sold shares in TCSC at a dramatically

---

[3] Relator contends that Defendant Meridian contributed its 60% of the assets of Treasury Coast Surgery, Inc. to a new entity called Treasure Coast Surgery Center LLC and caused the other shareholders of Treasury Coast Surgery, Inc. to contribute the remaining 40% of the assets to the new entity as well.

[4] Relator claims that a 1% share under the price paid by Meridian would be $96,000 and a 1% share as sold to the physicians by Meridian cost $23,000 to $27,000.

lower price than Meridian's purchase price of TCSC, the value it placed on Treasury Coast Surgery, Inc. when it was purchased.

The Amended Complaint also alleges that Defendants caused a high return of 25% or greater to be paid to the shareholder physicians on their "investments," as compared to Meridian's own return of 5.4% per year. Relator avers that the primary purpose of the $5.7 million payment to the physician shareholders of Treasury Coast Surgery, Inc., the sale of shares at a lower value, and the high return payments to the physician shareholders were to induce the physician shareholders to bind themselves to the Operating Agreement of TCSC, which allegedly allows only practicing physicians who refer Medicare patients to TCSC to own shares therein.[5]

The Amended Complaint sets forth examples of specific payments to Drs. Hoffman, Katz, Hill and Breslauer as representative examples of what Relator claims Defendant Meridian paid to all referring physician shareholders of TCSC in return for referrals. Docket No. 33, ¶¶ 67-98. The Amended Complaint also alleges that from 2007 to 2010, referrals by physician shareholders generated 81% of TCSC's Medicare claims, and Relator submits Exhibit A which allegedly lists a random sample of 369 Medicare claims that Meridian submitted as a result of such referrals. Relator contends that these claims were false and fraudulent because they were tainted from the AKS violations and, therefore, violated the FCA. Docket No. 33, ¶¶ 124 - 129.

Finally, Relator alleges, "on information and belief," that Meridian replicates the fraudulent, kickback-based business model of TCSC at the other Defendant ambulatory surgery centers, including John Doe corporations.

---

[5] The parties do not dispute that the Operating Agreement specifically provides that physicians are not required to refer patients to TCSC. Relator argues that provision is a "sham."

3

## STANDARD OF REVIEW

On this Motion to Dismiss, the Court must construe the Amended Complaint in the light most favorable to the Relator, accept all factual allegations as true, and determine whether the Amended Complaint contains enough facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 502 (6th Cir. 2007).

Complaints alleging FCA violations must also comply with Federal Rule of Civil Procedure 9(b)'s requirement that fraud be pled with particularity. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011). Rule 9(b) requires that in alleging fraud, a party must state with particularity the circumstances constituting fraud. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally. *Id.*

Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with Federal Rule of Civil Procedure 8. *Bledsoe*, 501 F.3d at 503. When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but it is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct. *Id.* In complying with Rule 9(b), a Relator, at a minimum, must allege the time, place and content of the alleged misrepresentation, the fraudulent scheme, the fraudulent intent of the defendants, and the injury resulting from the fraud. *Id.* at 504; *Chesbrough*, 655 F.3d at 467.

## FALSE CLAIMS ACT

The FCA penalizes any person who knowingly presents or causes to be presented to an officer or employee of the U.S. government a false or fraudulent claim for payment or approval. *Chesbrough*, 655 F.3d at 466 (citing 31 U.S.C. § 3729(a)(1)). It also penalizes any person who

4

knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government. *Id.* A private individual, known as a realtor, may bring a civil action for a violation of the FCA, also known as a *qui tam* action, on behalf of the government. 31 U.S.C. § 3730(b)(1).

## ANTI KICKBACK STATUTE

The Anti-Kickback Statute provides that:

> Whoever knowingly and willfully solicits or receives [or offers or pays] any remuneration (including any kickback, bribe or rebate) directly or indirectly, overtly or covertly, in cash or in kind ... in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program ... shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.[6]

42 U.S.C. §§ 1320a-7b(b)(1)(A) & (2)(A); *U.S. ex rel. Poteet v. Medtronic, Inc*. 552 F.3d 503, 508 (6th Cir. 2009). For purposes of the FCA, violation of the AKS is "a false or fraudulent claim." 42 U.S.C. § 1320a-7b(g). The AKS prohibits payment or remuneration of any kind if one or any purpose for that remuneration was to induce referrals and includes any person who recommends or arranges for federally funded medical services. *United States v. Rogan*, 459 F.Supp.2d 692, 722 (N.D. Ill. 2006).

Thus, to show illegal remunerations in violation of the AKS, Relator must show that Defendants knowingly and willingly offer or pay remuneration to physicians to induce those

---

[6] The AKS is a federal criminal statute. To obtain a conviction, the Government must show that a defendant (1) knowingly and willfully made a payment or offer of payment, (2) as an inducement to the payee, (3) to refer an individual (4) to another for the furnishing of an item or service that could be paid for by a federal health care program. *United States v. Miles*, 360 F.3d 472, 479-80 (5th Cir. 2004).

physicians to refer patients to the ambulatory surgical centers for services for which payment may be made under a federal health care program. 42 U.S.C. § 1320a-7b(b).

## DEFENDANTS' MOTION TO DISMISS

Defendants argue that Relator's Amended Complaint must be dismissed because he has failed to sufficiently plead a violation of the AKS. Defendants argue that Relator has failed to plead facts sufficient to show remuneration or to show inducement or to show knowing and willful conduct by Defendants. Defendants also argue that Relator's claims concerning all Defendant ambulatory surgery centers other than Meridian and TCSC and against the John Doe Defendants must be dismissed. Relator contends that his allegations of Defendants' improper inducements to referring physicians - including buying the referring physicians' shares at inflated prices, selling its own shares at deflated prices, and awarding fraudulent investment returns based on those shares - satisfy the pleading standard.

The Court finds that the Amended Complaint, as summarized above, sets forth sufficient facts to survive a Motion to Dismiss with regard to Relator's claims against Defendants Meridian and Treasure Coast Surgery Center, LLC. The facts alleged are clearly disputed and may be an appropriate subject of a summary judgment motion after discovery is complete; but for purposes of this Motion, Relator has sufficiently pled a plausible claim and has sufficiently alleged the fraud with particularity as to these Defendants.

Relator has sufficiently alleged the time, place and content of the alleged false claims, the fraudulent scheme of payments and referrals, the fraudulent intent of these Defendants, and the injury to the U.S. Government which resulted. Moreover, Relator has provided Defendants sufficient notice of the particulars of their alleged misconduct at this stage of the litigation. Indeed,

Defendants do not contend that Relator's allegations are unclear or do not provide sufficient notice of his claims.

Relator alleges that, based upon the value[7] which Meridian agreed to pay for the assets of Treasury Surgery, Inc., Defendants sold shares to physicians for substantially lower prices per share. Relator also contends that the returns paid to the physician investors were much higher than the returns paid to Meridian itself. As the parties are aware, the Court must accept the allegations of the Amended Complaint as true.

Relator's inducement allegations, although weaker, provide facts sufficient to state a plausible claim at this point in the litigation. Relator's identification of specific physicians, referrals, and claims may be subject to challenge on summary judgment, but it is sufficient for the case to go forward at this stage. In addition, the Amended Complaint sufficiently alleges intentional and fraudulent conduct by the Meridian Defendants.

The alleged false claims, some of which are specifically identified as Exhibit A to the Amended Complaint, involve payments for referrals that allegedly were made in violation of the AKS. Realtor contends that these physicians referred these patients for services for which federal remuneration was sought.

With regard to the other Defendant ambulatory surgical centers and the John Doe Defendants, Relator has not alleged sufficient facts with particularity to establish a claim for fraud under the AKS or FCA. The facts as to these Defendants, in addition to being based upon "information and belief," require speculation that Meridian operates all its businesses and binds all

---

[7] Defendants define "fair market value" as the price a willing buyer would pay a willing seller when neither is under compulsion to buy or sell. Docket No. 51, p. 11.

7

its physician shareholders to restrictive operating agreements similar or identical to the way it allegedly operates with regard to TCSC. Such speculation does not support a plausible claim or state with particularity the alleged fraud.

## CONCLUSION

For these reasons, Defendants' Motion to Dismiss (Docket No. 50) is DENIED as to Defendants Meridian Surgical Partners LLC, Meridian Surgical Partners - Florida II, LLC, MS Holding Co., Inc. and Treasure Coast Surgery Center, LLC. Defendant's Motion is GRANTED as to all other Defendants.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE